## No. 7573.

### VREDENBURGH VS. BEHAN ET AL.

Where defendants appeal suspensively and give bond, the plaintiff may test in the court below the sufficiency of the sureties, and an appeal will lie from a judgment sustaining their sufficiency.

When the law requires a surety to be given, it does not intend a mere formality to be gone through. It intends to give the creditor something that will be available to pay his debt.

Where the wife sues for separation of property and restitution of paraphernal effects, a discontinuance of the demand for separation is a discontinuance of her demand for a money judgment against the husband, since she can only obtain such judgment when she claims a separation of property and dissolution of the community.

APPEAL from the Sixth District Court, parish of Orleans. *Rightor,* J.

E. Howard McCaleb for plaintiff and appellee :

There is no doubt whatever of plaintiff's right to appeal from the judg-

ment of the court *a qua* accepting the sureties tendered by appellant, overruling the motions made to dismiss the appeal, and refusing to issue the executions demanded by the judgment creditor. It was so decided in 19 An. 4; 16 An. 192; 4 La. 111; 8 An. 288; 24 An. 329; Act No. 24 of 1876.

It is only in cases where the judge *a quo* dismisses the appeal and orders execution to issue, that the Supreme Court in aid of its appellate jurisdiction, will, by *mandamus* and *prohibition*, examine into the legality of the action of the lower court. 2 Rob. 550; 21 An. 735, 114; 23 An. 279, 491; 24 An. 316, 328.

Francis W. Baker, S. P. Blanc, G. W. Lane, W. S. Benedict, and Jos. P. Hornor for defendants and appellants:

First—No appeal lies from the judgment of the lower court discharging plaintiff's and appellee's rule to test the solvency of the sureties on the appeal-bond, and to issue execution. Act No. 24 of 1876 is the last and governing law on the subject, and does not intend that the action of the judge *a quo*, deciding that the sureties are solvent, should be reviewed by this court.

Second—Such an order is not a final judgment; nor is it an interlocutory judgment working irreparable injury.

Third—The law-makers never contemplated such an appeal—

Because no provision was made therefor.

Because no summary trial has been provided, and without it no benefit could accrue.

---

ON MOTION TO DISMISS.

The opinion of the court was delivered by

MANNING, C. J. The plaintiff recovered judgment against the defendants *in solido* for fifteen thousand dollars.

All the defendants except Pierce moved for a suspensive appeal which was granted, and they gave bond with sureties. The plaintiff took a rule on Pierce to shew cause why execution should not issue against him, and another rule on the other defendants to test the solvency and sufficiency of their sureties.

On the suggestion that Pierce's name had been omitted from the motion of appeal through a clerical error, he was allowed a suspensive appeal *nunc pro tunc,* and the rule upon him was discharged. After hearing testimony touching the sufficiency of the security, given by the other defendants, the rule against them was also discharged. The plaintiff appeals from these judgments, and the defendants move to dismiss on the grounds that the judgments are but interlocutory orders which do not work irreparable injury; and that no appeal lies from such

judgments, because the lower court is invested with the sole authority to pass finally upon the sufficiency of securities to appeal-bonds.

The law regulating suspensive appeals has this condition attached ;— provided that the party furnishing the security shall prove his solvency to the satisfaction of the court whenever it is questioned by any party interested in the appeal. Sess. Acts 1876, p. 49 amending art. 575 Code Prac. The defendants regard this as conclusive of the question, and since they have proved the solvency of their sureties to the satisfaction of the court, they insist that is an end of the matter.

But the same language may be employed in relation to any demand made before a court. If a person shall prove his demand to the satisfaction of the court he shall have judgment therefor. This does not imply that an appeal will not lie from a judgment rendered on such demand, if it be for an appealable sum. Suppose upon a rule to test the sufficiency of an appeal-bond the proof is beyond cavil in its favour, and the lower judge arbitrarily rejects the bond and execution is about to issue. Would not this court protect the appellant from the irreparable injury about to be inflicted on him, if he should invoke the writs of mandamus and prohibition? It would be peculiarly our province to do so under the new Constitution. art. 90.

The question seems never to have been directly presented before, and our examination of it has been unnecessarily prolonged by citations of decisions that are wholly irrelevant.

In Perilliat v. Fernandez, 16 Annual, 192, where the reporter's syllabus. is altogether wrong, there was a rule below such as this and judgment thereupon, but no appeal was taken from that judgment. When the principal appeal came up, the appellee moved here to dismiss it so far as it was suspensive, and the court said as there was no appeal taken from the judgment on the rule, they would not review it under the appeal previously granted. This implies that if the appellant there had done what the plaintiff here has, the court would have reviewed it.

Later, the court refused to dismiss on the ground that the sureties to the appeal-bond are not good, because the evidence touching the solvency was not properly before them, Generes v. Fluker, 24 Annual, 329, and we refused a similar motion for the reason that no objection to the sufficiency of the bond was made in the lower court. Edwards' case, 29 Annual, 597.

If we should refuse this appeal, and the judgment on the principal appeal is affirmed, and upon execution issuing against the sureties it should turn out that they are what the plaintiff's brief describes them, irreparable injury would be done, for a judgment for fifteen thousand dollars could not be made out of " two certificated bankrupts, two non-residents, one tutor plastered with a minor's mortgage exceeding three

times his entire estate, one impecunious husband oppressed by his wife's sworn claim for over fifty-eight thousand dollars, and a number of stockholders, bondholders, and possessors of cash and other intangible, invisible objects."

The correctness of this description of the sureties is not a matter of present concern. The right to have the judgment of the lower court reviewed, upon a matter so vital to the plaintiff as the solvency of the securities to the appeal-bond, is the question we now have to settle, and we are very clearly of opinion that such right exists.

The motion to dismiss is refused. ·

———

On appeal from the decree of the lower court, discharging rule of plaintiff to test the solvency of sureties on appeal-bond, the opinion of the court was delivered by

DeBlanc, J. Defendants suspensively appealed from a judgment rendered against them, and gave bond for $28,500, with twelve different sureties, whose solvency was tested in the lower court in a rule taken by plaintiff, and which was there tried and discharged.

From the decree discharging that rule, plaintiff appealed, and defendants moved to dismiss her appeal. We refused their motion, and they now contend that the two appeals—their own and plaintiff's—must be tried in their regular order on the docket, as two distinct cases.

What was the real object of the discharged rule? It was to ascertain whether defendants had complied with those legal requirements, without which no appeal can ascend to and reach this jurisdiction, and it is clear that—before we can consider and pass upon what purports to be an appeal—we are bound to hear those of the interested parties who regularly deny its very existence.

The judgment appealed from by defendants is—in amount—for $15,000, and—to perfect their appeal—they had to give, in favor of the clerk, an obligation for $22,500, with good and solvent sureties, residing within the jurisdiction of the court by which the judgment was rendered, and this—according to plaintiff's averments—they did not do; but the lower court thought and held otherwise.

As to the solvency and qualifications of the sureties furnished by defendants, what are the facts? Two of them, Keep for $2500, and Webster for $1000, were called as witnesses, and testified that they do not reside within the jurisdiction of the court which rendered the judgment.

It matters not that they have inferentially submitted themselves to the proper jurisdiction—for we ourselves held "that a judicial tribunal has no more power to accept as surety on an appeal-bond a person not

residing within its jurisdiction, than it would have to accept as such a person not having in the State property liable to seizure."

Acts of 1876, p. 49, 50 ; 30 A. 584-5.

Defendants' counsel argue that, according to the last paragraph of Act 67 of 1876, a surety may render himself amenable to the process of a court beyond the territory of his residence. Of this there is no doubt ; but that act, which merely amends art. 3042 of the Civil Code, provides—as did and does the amended article—that, unless under specified circumstances and as regards administrators, executors, tutors, curators and fiduciaries, the surety's domicile must be in the jurisdiction of the court where it is to be given.

C. C. 3042 (3011) ; Act of 1876, p. 109.

The qualifications of the surety on the bond of one who takes a suspensive appeal from a judgment rendered for a specific sum, are fixed by the 575th article of the Code of Practice and Act No. 24 of the legislature of 1876, and though one may accept, no one can be compelled to accept as surety any other but one who has the qualifications required by said article and act, and—therefore—the objections urged against Webster and Keep must prevail.

The other sureties were also sworn, and examined as to their solvency.

John I. Adams, who obligated himself for one thousand dollars, said : that his firm is in bankruptcy, that he is indebted for nearly half a million of dollars, and that he did not consider that he is worth the amount of his obligation. The written statement which accompanies his declaration does in no way contradict it, and—when he signed the bond and testified—he was absolutely insolvent.

McCutcheon, another surety for $2500, declared that he owned, in the Louisiana National Bank, one hundred shares worth $9000—in the Union National Bank, fifty shares worth each $85, and insurance stock worth about $1000, and that he is not indebted.

It was shown—by the cashier of the Louisiana National Bank, and by the record of Mrs. McCutcheon's judgment against her husband, that she owns the one hundred shares of that bank, which he referred to as belonging to him. *Non constat*, we are told by defendants' counsel, that the husband and wife had not each an equal amount of that stock. If such had been the fact, they would not have failed to prove it.

It appears that, on the 13th of May 1879, a general mortgage was recorded against him, to secure the re-imbursement of $58,915 82 alleged to be due by him to his wife. He said that he received that amount in notes which he still holds and in bonds which he sold. That he has, in the house where he lives, the proceeds of that sale. As to the price which he received for those bonds, he did not tell.

He was sued by his wife, who claimed a separation of property, on the sworn averment that she was entitled to it, on account of the disorder of his affairs, but she—thereafter—discontinued her demand for a separation of property, and merely resumed the administration of her paraphernal effects, and—among these and in the words of the decree rendered in her favor—" of one hundred shares now standing in his name on the books of the Louisiana National Bank."

It was incumbent on defendants to prove the contested solvency of that surety, and they have failed to do it.

Is Staub solvent? He bound himself for one thousand dollars. He is separated in property from his wife. He owns household and kitchen furniture—the best part of which he valued at $75, a watch and chain, lockets, gold buttons and several other little articles, which—he supposes—cost him between two hundred and fifty to three hundred dollars. He also has an interest in a commercial business, which—he again supposes—is worth about $600, and twenty shares of mining stock in Nevada. He is the holder of notes, but how many, by whom due and for what amount, he was not asked and did not tell. He is the tutor of Julius H. Cohen, and—as such—gave a bond for $3000, which stands recorded against him. He said he owes nothing to the minor; that his wife is indebted to him, and for only $465. If so, why did he give that bond, and—by his own act—contribute to reduce or rather destroy an already limited solvency, which—even without that additional liability—was not equal to his obligation?

The evidence leaves no doubt that at least five of the sureties who signed the bond, and—collectively—for eight thousand dollars—are not such as the law requires, and that said bond is insufficient for a suspensive appeal. For these reasons,

It is ordered, adjudged and decreed that the judgment rendered on the rule filed by plaintiff on the 16th of September 1879, is avoided and reversed, said rule made absolute at defendants' costs in both courts, and the order granted for the suspensive appeal therein referred to set aside and annulled.

---

### ON APPLICATION FOR REHEARING.

SPENCER, J. The very earnest appeal made for a rehearing in this case has induced us to re-examine the facts relative to the solvency of McCutcheon, Jno. I. Adams, and Staub.

When the law requires a surety to be given, it does not intend a mere formality to be gone through. It intends that the creditor shall have pledged for his debt something that may be made available for its payment.

We can hardly think counsel are serious in urging that Staub and

Adams are good and sufficient sureties for the sum of $2000. It would be a mockery of justice to so treat them. We therefore dismiss them from further consideration.

The solvency of McCutcheon is more debatable.

His solvency depends upon the extent of his liability to his wife. She has recorded against him a mortgage for $58,916 based upon her oath. The indebtedness consists, as charged by her, of about $44,000 in State bonds, and mortgage notes for about $12,000, and other effects.

McCutcheon when on the stand as a witness, says this $58,916 represents the amount of his wife's paraphernal property. True he is asked if she has not resumed its administration, and he answers " yes." But, in the next breath, he tells us that HE *has the note in bank,* and that *he has sold the bonds, and that he has the proceeds.* This shows that she has not got the administration of this property at least. It also shows that he owes his wife the amount or value of the bonds sold, and there is no legal proof that he has ever paid her.

But it is said, and such is the fact, that Mrs. McCutcheon had sued her husband, alleging that he had received of her paraphernal effects to amount of about $60,000 ; that she had learned that a part thereof had been by him invested in stock of the Louisiana National Bank, and of the Germania National Bank, and Hibernia Insurance Company.

She prayed to be adjudged owner of this stock, and that she be separated in property from him, and that she have judgment, with privilege and mortgage for such part of said paraphernal rights as he may fail to restore to her.

Her demand for separation of property was discontinued. She took judgment by default against him, condemning him to restore to her the administration of her paraphernal and other property together with its fruits and revenues, and decreeing her to be owner of the 100 shares of Louisiana National Bank stock standing in his name. This bank-stock is shown to have been worth about $9000.

When the wife discontinued her demand for separation of property, she thereby discontinued her demand for a money judgment against her husband. Since the wife can only recover a money judgment, when she claims and obtains a separation of property and dissolution of the community, her suit was, therefore, limited to a demand of restitution of such paraphernal property as existed in kind.

The judgment obtained by her does not bar her, therefore, from now or hereafter proceeding to demand a separation and a dissolution of the community, and a judgment for the value of such paraphernal effects as he has failed to restore to her. It is, we think, a mistake to say that the decree, declaring her to be owner of the 100 shares of bank-stock standing in his name, is restrictive of her paraphernal rights. She had

discontinued her money demand. The judgment only shows that the bank-stock was hers, and does not exempt the husband from being liable to her for the value of her other property of which he had disposed, some of which, as we have seen, he still has, and some of which he has sold. There is not a particle of proof that he has ever restored or paid for those bonds and notes. On the contrary, when on the stand in this case he swears he still has the note, and still has the proceeds of the bonds sold by him. The evidence, we think, fails to show him good and sufficient for the amount of his suretyship. The burden was on appellants to prove that fact. Act 24 of 1876.

It is said in the next place, that we have dismissed the appeal entirely. We have only held that the bond was not good for a suspensive appeal. If the appellants took, also, an order for devolutive appeal, and had the amount of bond therefor fixed by the court, the bond given by them may well be held good and sufficient to maintain a devolutive appeal. But that question is not before us. We hold that the judge *a quo* erred in holding the bond good for a suspensive appeal. We are not advised as to whether any sum was fixed for a devolutive appeal, and, therefore, do not pass on the question at all.

We know no law or precedent which would justify us in permitting appellants to now furnish other sureties in lieu of those held to be bad.

However hard the case may be upon appellants, we must follow what we understand to be the plain letter of the law. There was a judgment against defendants for $15,000. To suspend that judgment, a bond for $22,500 with good and sufficient securities was necessary. It was not furnished. It is equally evident that we cannot hold a bond, which was bad when given and when tested, to be good now, because some of the defendants have to-day paid their virile portion of the judgment. Our mission is ended when we pass upon the case as presented to, and decided by, the judge *a quo*. The question is, was the bond good when taken for $22,500? We think not.

The rehearing is refused.